453 So.2d 1294 (1984)
Annie Sue TUCKER (Kennedy)
v.
George Richard TUCKER.
No. 54802.
Supreme Court of Mississippi.
August 15, 1984.
*1295 Albert Dickens, Jr., Jackson, for appellant.
Michael P. Younger, Johnston & Younger, Brandon, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
This matter comes before the Court on appeal of a Chancellor's decree refusing to modify custody of a ten year old female child only seven months after custody had been vested in the father. The Chancellor found that during that seven month period of time no material change in circumstances had occurred which adversely affected the welfare of the child and, accordingly, dismissed the application for modification. Having in mind our limited scope of review in matters such as this, and being unable to say that the Chancellor was manifestly in error with respect to his findings of fact or his ultimate decision, we affirm.

*1296 II.
On September 8, 1978, the Chancery Court of Rankin County entered its Final Decree that Annie Sue Tucker (now Annie Sue Tucker Kennedy), Appellant here, be granted a divorce of and from George Richard Tucker, Appellee here. The only portion of that decree of relevance here is that which placed the care, custody and control of Rachel Tucker, a female child born December 24, 1972, with her mother.
Some three years, eleven months later, on August 16, 1982, the Chancery Court of Rankin County entered a Decree of Modification, finding that since the rendition of the divorce decree there had been a material change in circumstances adversely affecting the child, Rachel Tucker, and providing that the permanent care, custody and control of Rachel thereafter be vested in her father, George Richard Tucker. This modification decree granted visitation rights to the mother on alternating weekends. No appeal was taken.
Approximately seven months later, on the weekend of March 13-14, 1983, the incident occurred which has given rise to round three between these parties. Rachel, then ten years of age, spent that weekend with her mother, who observed bruises on her body and concluded that Rachel had been abused by her father. As a result, Mrs. Kennedy, refused to allow Rachel to go back to her father.
Almost immediately, on March 15, 1983, George Richard Tucker filed his motion to have his ex-wife cited for contempt for her failure to return Rachel at the end of the weekend visitation period. The following day, March 16, 1983, Mrs. Kennedy filed the instant motion to modify custody citing Rachel's father's alleged abusive conduct.
On April 1, 1983, the Chancellor held a hearing on the consolidated counter-motions. As perhaps was inevitable, the testimony was in great conflict. There were bruises on Rachel's leg and back but it was highly disputed whether these bruises were the result of beatings by her father or Rachel's having fallen off her bicycle. Mrs. Kennedy also complained that the child was undernourished, not properly fed and clothed, and was always dirty, all of which Mr. Tucker denied. Mr. Tucker's final sin was that he had Rachel's hair cut  Mrs. Kennedy offered a picture into evidence showing that the child's hair was long and curly when she was younger.
In the final analysis, the Chancellor held Mrs. Kennedy in contempt of court but suspended any further action on that matter upon assurances that the child would be returned immediately to her father. The Chancellor also found that the motion to modify custody should be overruled and denied, and a Final Judgment to that affect was entered May 5, 1983. In that judgment, the Chancellor expressly found
"that there has been no showing that a material change in circumstances has occurred between the parties that would warrant a change in custody...."

III.
Annie Sue Tucker Kennedy has perfected her appeal to this Court and has assigned a single error, to wit: that the trial judge erred in holding that there was not a material change in circumstances to warrant the transfer in custody of the minor child of the parties, Rachel Tucker, to the Appellant.
Appellant's first error is her failure to recognize the limited scope of review of a custody decree on appeal to this Court. For example, in Yates v. Yates, 284 So.2d 46 (Miss. 1973), we stated
"... we, as an appellate court, will affirm the decree if the record shows any ground upon which the decision may be justified ... We will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interests of the child." 284 So.2d at 47
In this and many other contexts, findings of fact made by a chancellor may not be set aside or disturbed on appeal unless manifestly wrong. This is so whether the finding relates to an evidentiary fact question, e.g., did George Richard Tucker *1297 beat Rachel, or an ultimate fact question, e.g., has there been a material change in circumstances which adversely affects the child's welfare. Cheek v. Ricker, 431 So.2d 1139, 1143 (Miss. 1983).

B.
The rules of law applicable to cases such as these are well-settled. A decree for child custody shall not be modified so as to change custody from one parent to the other unless, subsequent to the original decree, there has been a material change in circumstances under which the child is living with the custodial parent which adversely affects the child's welfare. Denney v. Denney, 453 So.2d 693, 694 (Miss. 1984); Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss. 1983) Cheek v. Ricker, 431 So.2d 1139, 1143 (Miss. 1983); O'Neal v. Warden, 345 So.2d 610 (Miss. 1977).
The sort of change which would indicate the desirability of a change of custody, legally speaking, is one in the overall living conditions in which the child is found. The "totality of the circumstances" must be considered. Kavanaugh v. Carraway, 435 So.2d at 700. An isolated incident, e.g., an unwarranted striking of a child, does not in and of itself justify a change of custody. Before custody should be changed, the chancellor should find that the overall circumstances in which a child lives have materially changed and are likely to remain materially changed for the foreseeable future and, of course, that such change adversely impacts upon the child.
Even though the chancellor finds a material adverse change in circumstances, a change in custody is not automatic. That finding is merely the first step, the one which then authorizes and indeed challenges the chancellor to then go forward and determine whether the best interests of the child justify a change of custody.
In this context, we would reiterate what this Court said in Bowden v. Fayard, 355 So.2d 662 (Miss. 1978):
"Once the Court has determined which parent should have custody of the children, then they should be allowed the stabilizing influence of knowing where home is." 355 So.2d at 664
As Justice Hawkins has reminded us in Ballard v. Ballard, 434 So.2d 1357 (Miss. 1983), a change in custody is a
"jolting, traumatic experience. It is only that behavior of a parent which clearly posits or causes danger to the mental or emotional well-being of a child (whether such behavior is immoral or not), which is sufficient basis to seriously consider the drastic legal action of changing custody." 434 So.2d at 1360
Accordingly, even though the court finds that a material change in circumstances has occurred and that this change in circumstances adversely affects the child, the court must then ask the second question, is it in the best interests of the child to change custody, for in the final analysis the best interests and welfare of the child are always our polestar considerations. Denney v. Denney, 453 So.2d 693, 694 (Miss. 1984); Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983); Buntyn v. Smallwood, 412 So.2d 236, 238 (Miss. 1982).
A change in custody should never be made for the purpose of rewarding one parent or punishing the other. It should be made only where there has been a material change in circumstances adversely affecting the child and where, having in mind the considerations discussed above, the chancellor determines that such a change is in the best interests of the child.

C.
In the proceedings below, the Chancellor found that Rachel had not been abused by her father. He similarly found that the child did not appear to be undernourished or in any other way ill-treated. In the end the Chancellor stated
"I want the child back with the father. I know the child wants to go back to its mother. That's what she said when we were in court before. That's normal. *1298 But I want her back with her father... . I have observed the child, and I don't see that she's suffering from any malnutrition. I don't see a thing in the world wrong with the child; ... ."
Then in his Final Decree, the Chancellor expressly found
"that there has been no showing that a material change in circumstances has occurred ... . that would warrant a change in custody."
Having in mind our limited scope of review, we cannot say that the Chancellor was manifestly in error, particularly in view of the fact that custody had been fixed in the father only seven months earlier. We are by no means suggesting that there can never be a material change in circumstances warranting a change in custody occurring during a seven month period of time. Considering, however, what we have said above and the fact that children do not need to be bounced back and forth between their parents like a volleyball, that only seven months has elapsed since custody was fixed in one parent via an unappealed-from decree ordinarily should cause a Chancellor to have considerable reluctance in changing custody.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.
PATTERSON, C.J., not participating.