# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00509-SCT

*EDGAR CAPLES*

*v.*

*GWENDOLYN RATLIFF CAPLES*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/27/94 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | EDGAR CAPLES |
| ATTORNEYS FOR APPELLEE: | JEROME L. LOHRMANN |
| | JAMES ANDERSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 12/19/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/9/97 |

**BEFORE PRATHER, P.J., BANKS AND McRAE, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. In this custody modification case there was a failure to comply with Rule 81 of the Mississippi Rules of Civil Procedure with respect to notice of hearing. We, therefore reverse.

I.

¶2. On October 25, 1990 the appellant, Edgar Caples, (Edgar) and the appellee, Gwendolyn Ratliff Caples, (Gwendolyn) were granted a Decree of Divorce from the 303rd Judicial District Court of Dallas County, Texas. This decree ordered joint custody of the parties' minor son Edgar Stephen Caples (Stephen). The provisions of the joint custody decree gave Gwendolyn the right to establish the child's domicile and the right of physical possession of the child. At the time of the divorce, Gwendolyn and Stephen did reside in Jackson, Mississippi.

¶3. On May 18, 1993, Gwendolyn submitted a complaint for modification in the Chancery Court of the First Judicial District of Hinds County, Mississippi. Edgar answered the complaint and motion to dismiss claiming that the Mississippi court lacked jurisdiction. A hearing was held on August 4, 1993, which resulted in an order of continuance pending a decision by the 303rd Judicial District Court of Dallas County, Texas waiving jurisdiction to the Mississippi court. The court reconvened on January

18, 1994. Edgar, however, was not present. Counsel for Gwendolyn filed an order from the Texas court waiving jurisdiction in favor of the Mississippi court.

¶4. Gwendolyn testified that she had suffered a reduction in salary from her job of approximately $2,550 to $1,550 per month, and a reduction in child support received from Edgar of $133 to $108 per week. Gwendolyn stated that she could not afford housing, and that she and Stephen resided with relatives due to the financial burden imposed by the joint custody. The court ordered modification of the Texas joint custody decree but provided that Edgar would have visitation rights.

¶5. On February 24, 1994, the chancery court convened again to considered Edgar's motion for new trial. Edgar claimed that the modification granted at the January 18 hearing should be set aside because there was no material change in circumstances to justify modification of custody. Also, Edgar claimed that the order waiving jurisdiction to the Mississippi court was invalid. The Chancellor found that the 303rd Judicial District, Dallas County did transfer jurisdiction to the Mississippi court. The motion for a new trial was denied.

II.

¶6. Edgar argues that the modification of child custody was manifest error because it was not based upon a material change in circumstances. Edgar claims that the only change in circumstances is some minor inconvenience to the plaintiff in supporting the terms and conditions of the joint custody. Conversely, Gwendolyn argues that a material change in circumstances does exist to the degree necessary to justify modification of the child custody, and that such modification is in the best interest of the child.

¶7. "The prerequisites to a child custody modification are: (1) proving a material change in circumstances which adversely affects the welfare of the child and (2) finding that the best interest of the child requires the change of custody." *Smith v. Jones*, 654 So. 2d 480, 486 (Miss 1995). *Ash v. Ash*, 622 So. 2d 1264 (Miss. 1993). *Tucker v. Tucker*, 453 So. 2d 1294 (Miss. 1984). Moreover, implicit in the above prerequisites is the standard that ". . . a decision to change custody . . . must not be made hastily or without ample justification." *Ash v. Ash*, 622 So. 2d at 1266 (Miss. 1993). In order to properly consider this issue, a detailed analysis of the "totality of the circumstances" is required. *Tucker v. Tucker*, 453 So. 2d 1294 (Miss. 1984).

III.

¶8. Edgar's contention that the original custody determination only subjects the appellee to minor inconvenience is without merit. Testimony given by Gwendolyn to the Chancery Court reflects sufficient evidence to constitute a material change in circumstance since the original child custody decree was awarded by the Texas court. First, Gwendolyn has sustained a $12,000 reduction in her annual income. The child support received by Gwendolyn from Edgar has been reduced by $25 per week pursuant to an order from the District Court of the 303rd Judicial District, Dallas County, Texas. Although Gwendolyn did not appear at the hearing to contest the modification affecting the parent-child relationship, the Texas court made a finding that the change in child support was in the best interest of the child. Gwendolyn incurs visitations related costs in an amount equivalent to the child support payment of Edgar per month for each spring and summer session. The child and Gwendolyn must travel seven and one-half to eight hours by car because Gwendolyn is responsible

for visitation transportation to Edgar's residence in Texas. A balanced consideration of the above testimony indicates a change in circumstance to Gwendolyn that can be reasonably characterized as beyond mere inconvenience.

¶9. Gwendolyn's testimony does, however, raise some doubt as to the gravity of the detriment these circumstances have had on Stephen. When questioned regarding the progress of the joint custody, Gwendolyn stated that Stephen is perfectly fine and that he suffered no ill affects whatsoever. We have held that "[i]t is only that behavior of a parent which clearly posits or causes danger to the mental or emotional well-being of a child (whether such behavior is immoral or not), which is sufficient basis to seriously consider the drastic legal action of changing custody." ***Ballard v. Ballard***, 434 So. 2d 1357, 1360 (Miss. 1983); ***Smith v. Jones***, 654 So. 2d 480, 486 (Miss 1995). This rule was clarified in ***Tucker v. Tucker***, 453 So. 2d 1294, 1297 (Miss. 1984) where this Court described the sort of change which indicates a desirability for modification of custody as ". . . one in the overall living conditions in which the child is found." ***Id***. at 1297. While the above testimony suggests no direct harm that Stephen has experienced due to the joint custody decree, it is doubtful that the existing custody situation is in the best interest of the child.

¶10. In addition to the economic pressure that joint custody provision has exerted on Gwendolyn and Stephen, she claims that Edgar has used the joint custody vehicle to work a hardship on her and Stephen. Gwendolyn testified that Edgar has forced her to appear in Texas court proceedings about eight times on contempt charges that were based on petty and insignificant issues. Moreover, not only has Gwendolyn been held in contempt but she has incurred approximately $20,000 in legal fees and expenses as a result. Gwendolyn is raising Stephen under serious financial pressure and as a result has not been able to afford housing. Gwendolyn contends that the cost of complying with the joint custody requirement has impaired her ability to provide for her son. Hence, the overall living conditions in which Stephen is found have declined, at least in part, due to the custody provision.

¶11. The trial court did not commit manifest error in its decision to modify custody. The standard applied to determine manifest error is well-settled in our jurisprudence. "[T]he Supreme Court will not reverse a chancellor's findings of fact where the Court finds those facts by substantial credible evidence in the record unless the chancellor committed manifest error." ***Morrow v. Morrow***, 591 So. 2d 829 (Miss. 1991). The trial court relied upon uncontroverted testimony given by Gwendolyn as to circumstances regarding the existing joint custody situation. The evidence presented at trial was unchallenged.

IV.

¶12. Edgar argues that the 303rd District Court of Dallas County, Texas acquired continuous and exclusive jurisdiction over the custody, visitation, and child support issues when it rendered the 1990 Divorce Decree. Gwendolyn contends that the First Judicial District of Hinds County, Mississippi acquired jurisdiction from an order entered by the 303rd District Court of Dallas County, Texas on October 22, 1993. However, Edgar insists that this order was a fabrication improperly rendered by the presiding court. As a result of Edgar's objection to this order, a new order was issued by the 303rd District Court of Dallas County, Texas on December 29, 1996. Edgar claims that the latter order vest jurisdiction in the Courts of Collin County, Texas.

¶13. The chancery court correctly concluded that subject matter jurisdiction extended to the issues of

custody and visitation, but not child support based upon the December 29, 1993 order from the Texas court. The order declares that Mississippi is Stephen's home state and waives jurisdiction per section 152.002 of the Texas Family Code (formerly section 11.52) in favor of the Hinds County, Mississippi as to the portions of jurisdiction conferred on the child's home state. With regard to custody determinations, section 152.002 provides that court decisions providing for custody and visitation rights are waived to the State of Mississippi. Edgar argued that the order transferred jurisdiction to Collin County, Texas, and the trial court agreed. But, the trial judge found a simultaneous waiver of jurisdiction granted to the Mississippi court by the 303rd District Court of Dallas, Texas on December 29, 1996. Moreover, based on these facts Miss. Code Ann. § 93-23-5(1) (1972) grants the Chancery Court the authority to exercise jurisdiction as to the child custody matter. The trial judge found no need to go beyond the language in the order and the Texas statute to determine jurisdiction.

## V.

¶14. Edgar relies on Miss. Code Ann. § 93-23-27 (1972) to argue that the trial failed to adequately consider corrections to the record. To put it mildly, the trial court experienced some difficulty maintaining the files related to this case. However, the appellant's argument that the loss of his case file resulted in an injustice has no merit. Miss. Code Ann. § 93-23-43 (1972) expressly requires that the Chancery Court hearing a custody proceeding concerning a custody decree rendered in another state request pleadings, orders, decrees and any record that have been made of the out-of-state court hearings. The court did make such a request and such documents were filed, but these files were later lost until sometime prior to the hearing on the motion for a new trial.

¶15. Even if the files were available to the trial court at the time of the January 18, 1994 modification hearing, their major contribution would have been to give the court notice of the December 29, 1994 order granting subject matter jurisdiction to the Mississippi court. The Chancery Court did not act outside of the jurisdiction granted by the Texas order. Therefore the loss of the case files is unfortunate, but Edgar fails to demonstrate how this exacts an injustice.

## VI.

¶16. Edgar asserts that the Chancery Court did not take sufficient steps to ensure that he was provided reasonable notice and an opportunity to be heard regarding the hearing scheduled for January 19, 1994 consistent with *Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 309 (1950). The record indicates that Edgar did receive notice and a summons on July 2, 1993 via certified mail as to Gwendolyn's action to modify child custody. Pursuant to this notice Edgar did appear before the Chancery Court of the First Judicial District of Hinds County, Mississippi on August 4, 1993. Thus, the Chancery Court acquired continuing personal jurisdiction over the parties. *Covington v. Covington*, 459 So. 2d 780, 782 (Miss. 1984), *superseded by statute, as stated in Powell v. Powell*, 644 So. 2d 269 (Miss. 1994).

¶17. Nevertheless, Edgar's claim that he received insufficient notice has merit because the notice granted did not comply with Rule 81 of the Mississippi Rules of Civil Procedure. Upon filing an action for modification of child custody, Rule 81(d)(5) states that a ". . . summons shall issue commanding the defendant or respondent to appear and defend at a time and place, either in term time or vacation, at which the same shall be heard." In addition, the summons will not require an

answer, but the court may require an answer. M.R.C.P. 81(d)(4). While Edgar was served a summons, it did not comply with 81(d) M.R.C.P. because it did not indicate the time and place the complaint would be heard, and the summons required Edgar to mail or hand deliver a written response to the complaint. In spite of the improper summons, Edgar did appear before the Chancery Court of the First Judicial District of Hinds County, Mississippi on August 4, 1993. This hearing, however, was recessed without any discussion of the merits because the trial judge found insufficient authority to assume jurisdiction. No order was entered that day setting a specific date for further proceedings. The proper procedure under Rule 81 would have been to serve Edgar an additional Rule 81 summons. A Rule 81 summons would have outlined the time and date for the trial court hearing and informed Edgar. *Powell v. Powell*, 644 So. 2d 269, 273 (Miss. 1994). Therefore, because the notice issued to Edgar was inconsistent with Rule 81 M.R.C.P., the notice was defective. It follows that we are compelled to reverse the judgment and remand this matter to the chancery court.

¶18. For the foregoing reasons we reverse and remand for a new trial.

**¶19. REVERSED AND REMANDED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**