800 So.2d 1212 (2001)
Tawnya Lynn FLETCHER, Appellant
v.
John Eric SHAW, Appellee.
No. 2000-CA-00212-COA.
Court of Appeals of Mississippi.
November 20, 2001.
*1213 Arnold D. Dyre, Jackson, T. Swayze Alford, Oxford, Brian Austin Hinton, Jackson, for Appellant.
Rebecca C. Phipps, Corinth, for Appellee.
Before SOUTHWICK, P.J., THOMAS, and IRVING, JJ.
THOMAS, J., for the Court.
¶ 1. Tawnya Lynn Fletcher, the natural mother, appeals the lower court's order of custody modification which transferred custody of the minor child to John Eric Shaw, the natural father. Fletcher asserts the following issue:
*1214 I. THE CHANCELLOR COMMITTED REVERSIBLE ERROR IN ORDERING A MODIFICATION OF CUSTODY WITHOUT APPLICATION OF THE PROPER LEGAL STANDARD.

FACTS
¶ 2. Fletcher gave birth to Tara Shea Fletcher Shaw on June 19, 1991, in Fairfax, Virginia. Shaw did not learn that he was Tara's father until March of 1993 when a conclusive blood analysis made such a determination. Fletcher and Shaw were never married.
¶ 3. While Fletcher was residing in Maryland with the child, she agreed with Shaw to a custody and child support contract, which was legally validated by an appropriate Maryland court. This agreement granted custody of the child to Fletcher and Shaw was granted liberal visitation rights. Soon afterward, Fletcher and Tara moved to Corinth, Mississippi.
¶ 4. On January 19, 1999, Shaw filed a motion to modify the former order of custody, alleging a material change of circumstances warranting a modification of custody. On August 17, 1999, trial was held on the motion to modify custody. Shaw called Fletcher as an adverse witness. Fletcher opted to go ahead with her direct examination at that time. After Fletcher's testimony, Shaw called his brother and then Shaw himself testified on his own behalf. After his own testimony, Shaw rested. Fletcher presented Billy and Nita Ashcraft, a couple with whom she had lived while in Mississippi. At that time, Fletcher rested.
¶ 5. At the conclusion of the trial, the chancellor held that Shaw should be granted permanent physical custody of the child subject to reasonable visitation rights granted to Fletcher.

ANALYSIS

I. DID THE CHANCELLOR COMMIT REVERSIBLE ERROR IN ORDERING A MODIFICATION OF CUSTODY WITHOUT APPLICATION OF THE PROPER LEGAL STANDARD?
¶ 6. In a domestic case, such as the case at hand, the chancellor's findings will not be reversed unless manifestly wrong, clearly erroneous, or the proper legal standard was not applied. Bland v. Bland, 620 So.2d 543, 544 (Miss.1993). In showing by the preponderance of evidence that a material change in circumstances has occurred in the custodial home, the burden of proof is on the movant. Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996).
¶ 7. In cases involving an initial award of custody, as in the case of most divorces, the chancellor is given considerable discretion so long as the chancellor follows the dictates of Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983), which provides that the chancellor consider the following factors in awarding custody:
We reaffirm the rule that the polestar consideration in child custody cases is the best interest and welfare of the child. The age of the child is subordinated to that rule and is but one factor to be considered. Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community *1215 record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.
Marital fault should not be used as a sanction in custody awards. Relative financial situations is not controlling since the duty to support is independent of the right to custody. Differences in religion, personal values and lifestyles should not be the sole basis for custody decisions.
Id.
¶ 8. Our supreme court has held that the basic application of the Albright analysis is to be applied in order to find the best interests of the child when a chancellor is to make a decision involving a custody dispute between the parents of an illegitimate child. Law v. Page, 618 So.2d 96, 101-2 (Miss.1993). This is true of any original decree of custody in a dispute between the natural parents of the child whether they were married or not. Id. However, unlike the situation presented in Law, the parents in the case at hand had a court approved contract establishing paternity and custody of the child. Miss.Code Ann. §§ 43-19-33(2) and 93-9-30. "The `material changes' standard used in modification proceedings is dependent on there being a prior determination of custody." Law, 618 So.2d at 101. Therefore, the "material change" modification standard applies in the situation at hand.
¶ 9. In cases involving a request for modification of custody, the chancellor's duty is to determine if there has been a material change in the circumstances since the award of initial custody which has adversely affected the child and which, in the best interests of the child, requires a change in custody. Brawley v. Brawley, 734 So.2d 237 (Miss.Ct.App.1999); Bredemeier v. Jackson, 689 So.2d 770 (Miss. 1997); Bubac v. Boston, 600 So.2d 951 (Miss.1992); Phillips v. Phillips, 555 So.2d 698, 700-1 (Miss.1989); Pace v. Owens, 511 So.2d 489 (Miss.1987); Duran v. Weaver, 495 So.2d 1355 (Miss.1986); Smith v. Todd, 464 So.2d 1155 (Miss.1985); Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984); Marascalco v. Marascalco, 445 So.2d 1380 (Miss.1984); Kavanaugh v. Carraway, 435 So.2d 697 (Miss.1983). Therefore, the non-custodial parent must satisfy a three part test: "a substantial change in circumstances of the custodial parent since the original custody decree, the substantial change's adverse impact on the welfare of the child, and the necessity of the custody modification for the best interest of the child." Brawley v. Brawley, 734 So.2d 237 (¶ 12) (Miss.Ct.App. 1999) (citing Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997)); Pace v. Owens, 511 So.2d 489 (Miss.1987); Duran v. Weaver, 495 So.2d 1355 (Miss.1986); Smith v. Todd, 464 So.2d 1155 (Miss.1985). This Court has also noted that "the `totality of the circumstances' must be considered." Wright v. Stanley, 700 So.2d 274, 280 (Miss.1997) (citing Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993)). Further, it is well settled that the polestar consideration in any child custody matter is the best interest and welfare of the child. Whittington v. Whittington, 724 So.2d 922 (¶ 10) (Miss.Ct.App.1998) (citing Albright, 437 So.2d at 1005).
¶ 10. In order to clarify the type or magnitude of material change that warrants a modification of custody, our supreme court explained that when the totality of the circumstances display a material change in the overall living conditions in which the child is found which are likely to remain changed in the foreseeable future and such change adversely affects the child, a modification of custody is legally *1216 proper. Kavanaugh, 435 So.2d at 700. The court has also stated that: "It is only that behavior of a parent which clearly posits or causes danger to the mental or emotional well-being of a child (whether such behavior is immoral or not), which is sufficient basis to seriously consider the drastic legal action of changing custody." Ballard v. Ballard, 434 So.2d 1357, 1360 (Miss.1983). However, "an isolated incident, e.g., an unwarranted striking of a child, does not in and of itself justify a change of custody." Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984). In Tucker, the court also made it clear that a modification of custody should never be made for the purpose of punishing or rewarding either parent. Tucker, 453 So.2d at 1297.
¶ 11. Plainly stated, a modification of custody is warranted in the event that the moving parent successfully shows that there has been a material change in the circumstances which has an adverse effect on the child and a modification of custody would be in the child's best interest.
¶ 12. With this legal standard in mind, we turn to the case at hand. In order to determine whether or not the chancellor was manifestly wrong, clearly erroneous or abused his discretion in applying the Albright factors, we review the record of the proceedings in the lower court.
¶ 13. The chancellor found that since the original decree of custody a substantial and material change in circumstances had occurred in the following ways: Fletcher displayed poor parenting skills, an unwillingness and capacity to provide primary child care, sporadic employment, questionable mental health, and a general lack of a stable home environment. Shaw displayed circumstances converse to those of Fletcher. We cite at length from the chancellor's supplemental findings of fact and conclusions of law which we requested after this case was deflected to this Court:
At that time [of the original decree of custody] Tawnya Lynn Fletcher and the minor child lived in Alcorn County, Mississippi and John Eric Shaw lived in the state of Virginia. Tawnya Lynn Fletcher and the minor child moved to the state of Maryland where she resided with a man to whom she was not married, Rich Johnson, who was the father of a son she had, named Freddie.
Tawnya Lynn Fletcher and the two minor children moved back to Corinth, Mississippi where they resided with Billy and Nita Ashcraft who were not relatives, but friends of Tawyna Lynn Fletcher. Tawnya Lynn Fletcher then moved to two different places in Booneville, Mississippi, then later moved back to Corinth, Mississippi.
During this time, the minor child had reached school age and was enrolled in the public school system of Booneville, Mississippi and later Corinth, Mississippi.
John Eric Shaw had visitation periods with the minor child, mostly occurring during the summer months when the minor child was out of school and did exercise this visitation.
While back in Corinth, Mississippi living at the home of the Ashcrafts, Tawnya Lynn Fletcher became unemployed and remained so for some period of time. Tawnya Lynn Fletcher would frequently go out at night and often not return until days later leaving the minor child with the Ashcrafts.
On January 19, 1999, John Eric Shaw learned from the Ashcrafts that Tawnya Lynn Fletcher had left their home and supposedly gone to the state of California, leaving the minor child with the Ashcrafts. On that day, John Eric Shaw filed for modification to receive the custody of the minor child. Process was sent to the home of the Ashcrafts, *1217 but was not served upon Tawnya Lynn Fletcher. The record is clear that Tawnya Lynn Fletcher had notice of the hearing by virtue of a telephone conversation with Mrs. Ashcraft.
By temporary order dated January 25, 1999, this Court placed the custody of the minor child on a temporary basis with John Eric Shaw until a hearing on the merits on modification could be held.
On August 17, 1999, this Court held a hearing on the merits of John Eric Shaw's request for modification so as to obtain custody of the minor child.
The proof presented to the Court at that hearing was replete as to a practical "nomad" existence on the part of Tawnya Lynn Fletcher with her two minor children, living at times with the Ashcrafts in Corinth, at two places in Booneville, and at a separate apartment in Corinth, before moving back once again to the home of the Ashcrafts. Tawnya Lynn Fletcher never held the numerous jobs she worked at over a few weeks. While in Booneville, Tawnya Lynn Fletcher had a third child out of wedlock and no proof was offered at to what ever became of that child, but apparently she no longer has it as she never mentioned it again.
Tawnya Lynn Fletcher was obsessed with the fact that "people were out to get rid of her," that her purse and car were "bugged," that cameras were placed in her bathroom. Probably the closest person to Tawnya Lynn Fletcher during this critical period, Nita Ashcraft, testified that Tawnya Lynn Fletcher was acting strange and was upset. Mrs. Ashcraft testified that Tawnya Lynn Fletcher could not provide a stable environment for the minor child and that John Eric Shaw and his family in Virginia could provide a stable environment. Both Billy and Nita Ashcraft further testified that the minor child would be better off living with John Eric Shaw.
The proof was very clear that John Eric Shaw has a stable home, stable employment and an extended family including father, mother and brother who live close to him, have a close relationship with the minor child and can and do assist John Eric Shaw in caring for the minor child.
Considering the totality of the circumstances as presented by the proof and having had the opportunity to observe the parties as they entered the courtroom, sat during trial and testified, this Court finds that Tawnya Lynn Fletcher is an extremely unstable, often irrational person, who cannot provide a proper home or custodial environment for the minor child.
¶ 14. It is clear from the record that there has been a material change in the circumstances since the original decree of custody, such changes in circumstances warrant a modification of custody and it is in the children's best interests to be in Shaw's custody.
¶ 15. THE JUDGMENT OF THE ACORN COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.