863 So.2d 1010 (2004)
Marty H. IVY, Appellant
v.
Tina L. IVY, Appellee.
No. 2001-CA-01852-COA.
Court of Appeals of Mississippi.
January 6, 2004.
*1011 Harvey Lee Morrison, Joseph Joshua Stevens, West Point, attorneys for appellant.
J. Tyson Graham, Columbus, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and GRIFFIS, JJ.
MCMILLIN, C.J., for the Court.
¶ 1. Marty H. Ivy and Tina L. Ivy agreed to dissolve their marriage of some twelve years through the provisions of Mississippi law allowing the chancellor to grant a divorce when the parties agree that irreconcilable differences have arisen between them. The parties, however, were unable to resolve all the necessary aspects relating to the dissolution of their marriage and, under authority of Section 93-5-2 of the Mississippi Code, entered into a written stipulation to submit these matters to the chancellor for resolution. Among the issues upon which the parties could not agree was the question of custody of their two minor children. The children, both females, were eight and six years old at the time of the hearing. The chancellor concluded that both parents *1012 were fit to have custody and awarded joint legal custody with primary physical custody being given to Mrs. Ivy. Mr. Ivy, believing that the chancellor had failed to properly evaluate the relevant factors affecting the physical custody determination, appealed the chancellor's decision to this Court.
¶ 2. After a temporary remand of the matter for the limited purpose of permitting the chancellor to make more extensive findings of fact and conclusions of law regarding his custody determination, this Court permitted both parties to file supplemental briefs to address any matters raised in this addition to the record. After full consideration of the record made at trial, the chancellor's expanded findings of fact and conclusions of law, and the briefs of the parties, we are unconvinced that the chancellor's decision as to custody was manifestly in error or so contrary to the evidence as to constitute an abuse of the discretion afforded chancellors in such matters. For that reason, we affirm the chancellor's decision.

I.

The Limits of Our Inquiry
¶ 3. Our scope of review of a chancellor's determination of a custody question, by binding precedent, is limited to inquiry as to whether the chancellor has abused his discretion to reach a result that is manifestly wrong or clearly erroneous. Madden v. Rhodes, 626 So.2d 608, 616 (Miss.1993). A possible third reason to reverse is that the chancellor has applied an incorrect legal standard. Id. However, in this case we find this third ground to have no application since, upon receipt of the chancellor's supplement findings of fact and conclusions of law, it is clear that the chancellor applied the correct legal standard by assessing the relevant factors concerning the children's best interests, to include those considerations now imbedded in Mississippi jurisprudence as "the Albright factors." Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The sole issue before us, therefore, is whether the chancellor was plainly in error in his evaluation of the evidence, to include how that evidence impacted on the Albright factors, that ultimately led him to conclude that the best interest of the children would be served by Mrs. Ivy maintaining their primary physical custody. We do not so find.

II.

Facts
¶ 4. Both parties presented evidence intended to relate to the issue of custody of the children. Mr. Ivy's proof on the matter consisted primarily of evidence tending to show incidents of moral failings on the part of Mrs. Ivy and occurrences that tended to demonstrate her poor judgment in matters relating to her personal life and her effortor lack of effortto see to the children's welfare. The chancellor's failure to give proper weight to these alleged failings on the part of Mrs. Ivy is plainly at the heart of Mr. Ivy's argument for reversal since his brief confines itself almost entirely to a recitation of the various incidents and patterns of behavior concerning Mrs. Ivy that would tend to cast her in a bad light.
¶ 5. The factors stressed by Mr. Ivy include evidence that Mrs. Ivy had engaged in a number of adulterous encounters and that the children had become at least indirectly exposed to her adulterous conduct. The proof on that score consisted of evidence that Mrs. Ivy would, on occasion, permit the children to accompany her and her male companions on social outings.
¶ 6. Testimony was also offered that the children had poor attendance records at *1013 school and were frequently tardy while in Mrs. Ivy's care.
¶ 7. There was additional evidence tending to show that Mrs. Ivy was a poor financial manager in that the utilities at her home had been disconnected on multiple occasions for non-payment of the utility bills. There was also proof that Mrs. Ivy frequented a casino in Philadelphia with some regularity and engaged in gambling activities.
¶ 8. Mr. Ivy also presented evidence that Mrs. Ivy may have engaged in some questionable financial dealings that permitted her to improperly dissipate funds from a homeowners insurance claim that should have been applied to repair certain structural damage for which the claim was paid. Mr. Ivy contended that incidents such as this demonstrated that Mrs. Ivy set a poor example for the children and was, thus, a poor role model and a less-desirable custodial parent.

III.

Discussion
¶ 9. Decisions as to custody are not made for the purpose of punishing a parent for less-than-exemplary behavior. Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984). Rather, the underlying consideration in such matters must always be a determination as to what arrangement would be in the best interest of the children subject to the chancellor's jurisdiction. Id. A decision as to custody does not necessarily carry with it an express or implied determination that the prospective non-custodial parent is unfit to act in that role. A custody award, if properly made, simply means that the chancellor, after considering a wide range of factors relating to the children's welfare, has determined that, on overall balance, the anticipated arrangement best serves the interests of the children. Id. These factors, under precedent in this State, are generally understood to include an itemized list of considerations that have over time come to be known as "the Albright factors." Albright, 437 So.2d at 1005.
¶ 10. In order to have a meaningful appellate review of the chancellor's decision on custody matters, precedent requires that the chancellor make on-the-record findings of fact as to issues relating to custody as well as some analysis of how these facts affected the ultimate custodial decision. Case law suggests the need to utilize the framework of the enumerated Albright factors in making these findings and conclusions. Powell v. Ayars, 792 So.2d 240, 244 (¶ ¶ 8-10) (Miss.2001). As a practical matter, a part of that assessment involves the chancellor's determinations as to witness credibility and what weight and worth to afford to various aspects of the testimony. In our limited review of such matters, we are not permitted to re-weigh the evidence to make our own independent determination of where we think the weight of the evidence lies. Id. at 243(¶ 6). Rather, we must give due deference to the fact that the chancellor heard the witnesses face-to-face and, as a result, was best positioned to make those difficult subjective decisions as to credibility and trustworthiness of the witnesses. We are obligated to affirm unless we are convinced that the chancellor was plainly in error. Pacheco v. Pacheco, 770 So.2d 1007, 1009 (¶ 8) (Miss.Ct.App.2000).
¶ 11. After the temporary remand to afford the chancellor the opportunity to expand somewhat on his findings and analysis of the applicable law, this Court has had the opportunity to review his detailed discussion of the factors properly affecting a child custody determination and the chancellor's views as to how the evidence *1014 affected his conclusions as to those factors. The chancellor touched on each of the Albright factors and offered a reasoned analysis as to each one. Only after doing so did he reach the conclusion that, on balance, the weight of the evidence tended to favor a custody award to Mrs. Ivy. In very brief format, we summarize the chancellor's conclusions as to the various relevant considerations as set out in Albright.
(a) The chancellor combined the factors of age, sex and health of the children and found those factors, including the fact that the children were in apparent good health, to favor neither parent.
(b) The chancellor found that continuity of care prior to the separation favored Mrs. Ivy since she had been the primary caregiver while Mr. Ivy worked to earn money for family finances. As to this factor, even though Mr. Ivy's willingness to work long hours to assist the family financially, it is important to remember that custody determinations are not intended to reward or punish either parent, but those determinations must be made on factors relating to the children's best interests. Tucker, 453 So.2d at 1297.
(c) The chancellor found that Mrs. Ivy's parenting skills, based on the fact that she had served as the primary caregiver, favored her. Mr. Ivy's countering argument that the chancellor was in error in this finding was based primarily on proof of incidents involving alleged neglect of the children while Mrs. Ivy pursued her gambling activities and relationships with men other than her husband. The chancellor, as to that consideration, concluded that the evidence was not enough to demonstrate Mrs. Ivy's unfitness as a custodial parent, but was simply a factor to consider in view of the fact that "having less than desirable character and inferior moral traits" are often considerations with which the chancellor must deal. The chancellor found that Mr. Ivy's history also provided indications that he had devoted substantial time to activities other than his parenting responsibilities and concluded that this provided a counterbalance to the evidence of Mrs. Ivy's behavior.
(d) The chancellor commented on the fact that both parents now sincerely exhibited a willingness to be the primary caregiver, but gave some preference to Mrs. Ivy on this factor based on the finding that she had demonstrated her willingness to act in that role by actively doing so for a long period of time prior to the break-up of the marriage.
(e) The chancellor concluded that employment factors favored Mrs. Ivy because the proof showed that Mr. Ivy worked extended hours that would prevent him from devoting time to the children. Again, it must be noted that, though Mr. Ivy's long hours at work may be laudatory in terms of demonstrating his desire to provide financial support for the children, an adjudication of custody in his favor would not be an appropriate means of rewarding such behavior.
(f) The chancellor was unable to identify any pertinent health factors of either parent that would affect the custodial decision.
(g) The chancellor was convinced that there were strong emotional ties between the children and both parents; however, he found that this factor favored Mrs. Ivy to some degree because of the emotional link between her and the children that had been established through her years of acting as their primary caregiver.
(h) The issue of the moral fitness of the parents was found to be a neutral factor after the chancellor concluded that both had engaged in activities that were less than praiseworthy.
*1015 (i) The chancellor gave little weight to the absences and tardies of the children in school, based on the finding that the children's school performance had improved after the separation of the parties.
(j) Because of the age of the children, their preference as to custody was properly not considered by the chancellor.
(k) Noting that Mr. Ivy had been living with his parents, the chancellor concluded that there was nothing regarding stability in the home environment that would favor either parent. Neither did he find anything remarkable in the existing employment of either parent that would affect a custody determination beyond those factors earlier considered and discussed previously in this opinion.
(I) The chancellor finally concluded that neither party had advanced any other factors beyond the specifically-identified considerations in Albright that might be seen as affecting the custody determination.
¶ 12. There is evidence in the record to support these findings and conclusions by the chancellor. Certainly, as Mr. Ivy contends, there was also evidence presented that tended to weigh in favor of his ability to be the preferred caregiver for the children. This is the typical situation in any contested custody proceeding, and it is the chancellor's difficult duty to weigh the evidence, make critical assessments of witness credibility, and then reach a determination felt to best serve the interest of the children. It would appear that this is what transpired in this situation. As we have already observed, we are not charged to independently re-weigh the evidence and reach our own independent conclusion as to which parent we think would be the better custodial parent. Based on our limited scope of review, we are unable to find an abuse of discretion or other reversible error in the chancellor's decision as to custody.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF LOWNDES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.