# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00341-COA

CANDI CLARK                                                                         APPELLANT

v.

JAMES DEREK EARP                                                            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/03/2016 |
| TRIAL JUDGE: | HON. JOHN ANDREW HATCHER |
| COURT FROM WHICH APPEALED: | PONTOTOC COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | TOMMY WAYNE DEFER |
| ATTORNEYS FOR APPELLEE: | MICHAEL SPENCER CHAPMAN |
| | JASON D. HERRING |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| TRIAL COURT DISPOSITION: | MODIFIED CUSTODY OF THE MINOR CHILDREN AND AWARDED PHYSICAL CUSTODY TO APPELLEE AND VISITATION TO APPELLANT |
| DISPOSITION: | AFFIRMED: 08/01/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., WILSON AND WESTBROOKS, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Candi Clark appeals the chancellor's modification of custody.  We find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2.     Candi and James "Derek" Earp are the natural parents of Carly, born in 2007, and Chris, born in 2008.[1]  On February 6, 2012, an agreed order was entered awarding Candi and

---

[1] For privacy purposes, the minor children's names have been changed.

Derek joint legal custody of the minor children, with Candi having physical custody.

¶3. In 2012, Candi and the children moved in with Candi's boyfriend, Bobby Joe Chilcutt. On December 3, 2013, Bobby severely beat Candi and held her hostage in the home for approximately sixteen hours. Candi and the children subsequently moved in with her aunt. However, four months later, Candi and the children moved back in with Bobby. Although Bobby was charged with felony aggravated assault, Candi chose not to pursue the charge.

¶4. On April 15, 2014, Derek filed a "complaint for emergency relief, contempt, modification of custody [and] other relief" and sought custody of the children. Thereafter, on April 17, 2014, an order was entered wherein the parties agreed not to have "overnight guests of the opposite sex, not related by blood and marriage, while the minor children [were] in his/her care, custody and control." However, the record shows Candi disregarded this order and continued to live with Bobby and allow him to be present around her children.[2]

¶5. Candi subsequently filed an answer to Derek's complaint and a counterclaim for contempt and modification. In her counterclaim, Candi claimed Derek had failed to pay child support and that the original agreed order did not address payment of extracurricular activities and school expenses. As a result, Candi moved to modify the original agreed order to address the additional expenses. Candi further moved for the appointment of a guardian ad litem (GAL). A GAL was thereafter appointed in August 2014.

¶6. On August 27, 2015, Bobby severely beat Candi again and choked her until she became unconscious. Additionally, Bobby hit Candi's nephew in the face and threw his own

---

[2] Bobby, a truck driver, was not always at home. However, Candi acknowledged that when he was in town, he resided at the home with her and the children.

son over the couch by the neck. All of this occurred in front of Carly. Law enforcement was called, and Bobby was charged with domestic aggravated assault. Candi was subsequently granted a restraining order against Bobby.

¶7. Derek filed a motion for emergency relief on September 16, 2015, and sought "emergency and/or temporary physical custody" of the children. Following an emergency hearing, the chancellor denied Derek's motion. Specifically, the chancellor found as follows:

> The Court finds that whatever emergency may have existed was with the presence of [Bobby]. He's out of the home. He's agreed to be permanently restrained and is permanently restrained from being around [Candi] or the children, and any danger that may have existed as a result of that is not a threat now to the children, based on the evidence that I have heard so far. There are some concerns, but that's not the same thing as evidence. That may prove to be the case when we have a hearing on the merits. This is not a determination, a res judicata determination . . . . [T]hough that may change completely on a hearing on the merits, right now, the Court finds there is no emergency that warrants a change of custody of the children, and, therefore, the request for that is denied at this particular time.

¶8. A trial on the merits was held beginning December 9, 2015. During trial, Candi testified that Bobby did not regularly threaten violence or use profanity in front of the children. However, multiple videos were admitted into evidence from various visitation exchanges between Candi and Derek, which showed Bobby's violent behavior in front of the children. After Candi was confronted with this evidence, she acknowledged Bobby's violent nature, but stated, "[Bobby] was only like that towards [her] and them, their family."[3] Additionally, when asked why she would continue to live with a man who beat her, Candi

---

[3] It is unclear to whom Candi was referring when she said "them, their family." Regardless, the record shows Bobby was violent toward Derek, Derek's mother, Candi's nephew, his son, and the mother of his children.

responded, "Everybody changes."

¶9. Both of the children testified during the trial. Carly testified that Bobby hit, punched, choked, and said "ugly words" to Candi. Carly further testified that she was scared of Bobby and that Bobby got mad and angry pretty often. Although Chris stated he was not scared of Bobby, he testified that Bobby punched Candi and yelled at him as well. Moreover, Chris testified that he was told not to tell Derek what was going on at Bobby's house.

¶10. The GAL opined that based upon her investigation, the extensive interviews, and the trial testimony, a substantial and material change in circumstances had occurred, which would warrant a change in custody to Derek. The GAL found "[Candi]'s home situation evidenced a total lack of stability for the minor children over the last few years." The GAL further found that Candi had a "terrible job history and moved herself and the children numerous times even while this case was going on." Moreover, the GAL found that Candi "displayed a total lack of judgment in regard to the best interests of the children even while under the microscope of the Court."

¶11. By written judgment entered February 8, 2016, the chancellor found as follows:

> The Court finds that there has been a substantial change in circumstances of the custodial parent, [Candi], since the [a]greed [o]rder of February 6, 2012, which was the original custody decree, in that [Candi] has repeatedly exposed her children to a very dangerous man, with whom she lived in unlawful cohabitation, whose violent nature is clear to the Court beyond a reasonable doubt, and though [Bobby] is no longer present in the lives of the children, his presence remains a factor in the minds of both of the children, and the failure of their mother [Candi] to keep [Bobby] and his harmful influences away from the children and its [e]ffect on [Candi], too.
>
> The Court finds that there has been a substantial change adverse in its impact on the welfare of both of the children, but particularly in [Chris], whose grades

4

have deteriorated with little aid from their mother [Candi], and as such, the Court looks at the totality of the circumstances and recognizes that the polestar consideration is the best interests of the children, and in doing so has considered . . . the factors set forth in *Albright v. Albright*, 437 So. 2d 1003, 1004 (Miss. 1983) and its progeny. . . .

¶12. After conducting a detailed analysis of each *Albright* factor, the chancellor determined that "the best interests of the children require[d] a change of custody." As a result, the chancellor modified custody and awarded physical custody of Carly and Chris to Derek, and granted Candi visitation rights. The parties continued to share joint legal custody of the children.

¶13. Candi now appeals and argues: (1) the chancellor erred in finding a substantial change in circumstances since, at the time of trial, the circumstances upon which the chancellor relied no longer existed, and (2) the chancellor's finding of an adverse effect upon the children was not supported by substantial evidence.

STANDARD OF REVIEW

¶14. In a custody-modification proceeding, the noncustodial parent must prove by a preponderance of the evidence: "(1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody." *McSwain v. McSwain*, 943 So. 2d 1288, 1292 (¶15) (Miss. 2006) (quoting *Mabus v. Mabus*, 847 So. 2d 815, 818 (¶8) (Miss. 2003)). "A chancellor's finding of fact on such a matter will not be set aside or disturbed on appeal unless the finding is manifestly wrong or is not supported by substantial credible evidence." *McDonald v. McDonald*, 39 So. 3d 868, 880 (¶37) (Miss.

2010) (quoting *Bredemeier v. Jackson*, 689 So. 2d 770, 775 (Miss. 1997)).

ANALYSIS

I. *Substantial Change in Circumstances*

¶15. Candi asserts that because she "ha[d] removed herself and the children from the home and presence of [Bobby] and had further been awarded a [r]estraining [o]rder against him" prior to the December 2015 trial, the issue of Bobby's presence was "effectively rendered moot." Thus, Candi claims the chancellor erred in his determination of a substantial change in circumstances since the circumstances upon which he relied no longer existed. In support of her assertion, Candi relies on *Tucker v. Tucker*, 453 So. 2d 1294 (Miss. 1984).

¶16. In *Tucker*, the Court held that "[t]he 'totality of the circumstances' must be considered" and "[a]n isolated incident, e.g., an unwarranted striking of a child, does not in and of itself justify a change of custody." *Id*. at 1297. "Before custody should be changed, the chancellor should find that the overall circumstances in which a child lives have materially changed and are likely to remain materially changed for the foreseeable future." *Id*. We find Candi's reliance on *Tucker* is misplaced, as the record before us shows more than an isolated incident. Moreover, the record shows that the overall circumstances are likely to remain materially changed for the foreseeable future.

¶17. According to the record, just a few months after Bobby violently beat her and held her hostage, Candi, along with her children, returned to the home. When Derek moved for emergency relief, Candi agreed to no longer have overnight guests of the opposite sex. However, Candi disregarded this agreed order and continued to expose her children to

6

Bobby's violent nature. From 2012 to August 2015, the children witnessed numerous incidences of both verbal and physical abuse from Bobby against their mother. In addition to those incidences previously noted, Chris witnessed Bobby hit his mother's face with the car door, and watched Bobby burn his clothes. During the August 2015 incident, Carly not only witnessed Bobby beating and choking her mother, but also saw Bobby hit her cousin, and throw his own child over the couch by the neck. The children's counseling records indicate that this exposure "has resulted in feelings of fear and worries about [their] mother."

¶18. Additionally, both children witnessed Bobby repeatedly use profanity toward and threaten their dad. Recordings of certain visitation exchanges between Derek and Candi reveal Bobby's violent nature toward Derek in front of the children. In fact, during one of the visitation exchanges, Bobby actually pushed Derek.[4] Even more disturbing is the fact that Candi was present during the visitation exchanges and did nothing to stop Bobby. Instead, Candi stood idly by and, at times, even joined Bobby in his verbal rants.

¶19. As the chancellor noted, such abuse had an adverse impact not only on Carly and Chris, but also on Candi. The record indicates Candi struggled with depression and anger.[5] Although Candi was scared of Bobby, she continued to forgive and defend his actions and believed Bobby would change. Candi was aware of Bobby's violent nature, but chose not to remove herself or her children from such a dangerous and unstable environment.

---

[4] Although the video is unclear, the record shows charges were filed against Bobby for simple assault regarding the September 7, 2014 visitation exchange. Moreover, Candi admitted during testimony that she saw Bobby push Derek.

[5] Medical records show Candi injured her right hand after hitting the wall.

¶20. Candi's promises and assurances to the chancellor were understandably disregarded, as the record shows she repeatedly lied throughout the litigation and trial regarding the extent of Bobby's violent acts and conduct. Candi's claim that any adverse effect on the children has been rendered moot is premature at best, as "hardly enough time" has passed to determine whether Candi will in fact stay away from Bobby and "be able to provide a continuing stable environment" for herself and her children. *See Johnson v. Gray*, 859 So. 2d 1006, 1015 (¶40) (Miss. 2003) (The Court upheld the chancellor's decision to transfer custody from Johnson to Gray, stating that "hardly enough time" had passed "to determine if [Johnson would] be able to remain sober," and "[i]t [was] more likely that [Gray], and not [Johnson], [would] be able to provide a continuing stable environment.").

¶21. We find that the chancellor's determination of a substantial change in circumstances is supported by substantial credible evidence, and his findings were neither manifestly wrong nor clearly erroneous.

## II. Adverse Effect

¶22. Candi next argues the chancellor's finding of an adverse effect upon the children as a result of their exposure to Bobby was not supported by substantial evidence. Additionally, Candi claims there is "no evidence that [Bobby's] involvement with the children either caused or exacerbated [Chris]'s poor grades."

¶23. School records show that during Chris's first-grade year, from August 2014 to May 2015, he received B's and C's. However, his second-grade progress report shows that as of December 2015, Chris's grades had dropped and included an F in math. While we cannot

say that Bobby's presence was the sole cause of Chris's grade deterioration, it appears that Chris's exposure to Bobby's abuse was at least a contributing factor.[6]

¶24. Regardless, the chancellor did not limit his findings of an adverse effect to Bobby's presence. Instead, the chancellor's decision was based on substantial evidence of a dangerous and unstable environment, which included not only Bobby's presence, but also Candi's questionable conduct and judgment.

¶25. Carly and Chris testified regarding their exposure to Bobby's verbal and physical abuse. Additionally, the record shows that Candi's employment was sporadic and that she frequently moved, which resulted in the children changing schools multiple times. Both the counseling records and the GAL report indicate how such abuse and instability adversely affected the children.

¶26. Considering the totality of the circumstances, Candi's continued cohabitation with a dangerous man, when combined with her poor judgment and instability, and an overall unstable environment, constitutes an adverse impact to the children's welfare. *See Duke v. Elmore*, 956 So. 2d 244, 250 (¶15) (Miss. Ct. App. 2006). Thus, we find substantial evidentiary support for the chancellor's finding of an adverse effect on the children.

III. *Best Interests of the children*

¶27. Candi does not contest the last factor of custody modification, whether the children's best interests mandated a change of custody, nor does she contest the chancellor's *Albright* analysis. Nevertheless, we note that based upon our review of the record, the chancellor's

---

[6] In addition to concerns over their mother, the counseling records also indicate the children were anxious over the custody dispute.

9

determination that Carly and Chris's best interests would be served by a modification of custody is supported by substantial evidence in the record, and was neither manifestly wrong nor clearly erroneous.

CONCLUSION

¶28. The record shows the chancellor thoroughly examined the evidence and performed an *Albright* analysis. Based upon our review of the record, and in light of our limited standard of review, we find the chancellor's decision to modify custody was proper. We therefore affirm.

¶29. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**