OSBORNE *v.* VINCE

No. 41833　　　April 24, 1961　　　129 So. 2d 345

*Alexander & Herring,* Jackson, for appellants.

*W. H. Watkins,* Tylertown, for appellees.

ETHRIDGE, J.

The issue is whether the chancery court erred in permitting complainants to amend their bill of complaint fifteen years after it had been filed and there had been no intervening prosecution by them of their suit. We think this was manifest error, and hold that defendant's motion to dismiss for want of prosecution should have been sustained.

On May 2, 1945, appellee Ollie Vince filed a bill of complaint in the Chancery Court of Walthall County against Ed W. Dawson, address unknown, and W. B. Osborne, San Antonio, Texas. The bill was wholly insufficient to charge a cause of action. From the amendment later sought by complainant, apparently the mineral interest involved was in the NE¼ of the SE¼, Section 19, Township 1 North, Range 13 East, of Walthall County. The first paragraph of the bill recited complainant owned that land and another twenty acres. However, it then charged that in 1939 complainant executed to Dawson a mineral deed covering another tract of land, not that described above. No reference was made to the book and page of its recording. Dawson transferred this interest to W. B. Osborne, as to certain described lands not those stated above. The mineral deed was a cloud on complainant's title and should be cancelled, because L. F. Magee was Dawson's agent when it was

executed and Magee did not secure the signature of complainant's wife, who did not sign the deed. The bill did not aver the property was homestead. It stated that Magee later promised Vince he would "release" the mineral deed upon payment of a certain sum, which Vince paid; and that the deed itself was secured by fraud. Those in substance are the allegations of the bill of complaint.

It is manifest that the bill of complaint is wholly inadequate. It does not seek under a proper description to cancel the mineral interest of Osborne as to any lands Osborne claimed. It incorrectly described such lands. It charged fraud as a conclusion, without any facts to support it. It did not charge that the land was homestead property, nor that the signature of complainant's wife was forged.

The record reflects a publication of process for Dawson, but none for Osborne. However, on May 29, 1945, the chancellor entered an order reciting that on motion of Osborne, made in open court, he was allowed an additional thirty days in which to plead.

James A. Alexander, Jr., an attorney of Jackson, testified that shortly after May 2, 1945, a copy of the bill of complaint was received in his law office, and on May 21, he wrote Thomas Nunnelley, attorney for Vince, calling his attention to the fact of the inconsistent and inadequate property description, and asking him to advise as to the discrepancy, with a request for additional time to answer. On May 24, a somewhat similar letter was again written to Nunnelley. On May 31, the latter wrote Alexander thanking him for calling his attention to the error, and stating it would be corrected by amendment as soon as he could prepare it, with a copy to be sent defendant's counsel. On June 2, Alexander again wrote Nunnelly stating that, although he had additional time to plead, an answer would not serve any purpose until the bill was amended. On June 30, 1945, defendant's

counsel again wrote complainant's attorney that he had not filed an answer, since Osborne did not claim any interest in the land described by the bill. The case was not continued by consent. Defendants "did not care whether" complainant prosecuted the suit or not. Alexander did not know Nunnelley, and had no knowledge of his moving and death.

The papers in this 1945 case were never in the chancery clerk's files; it was "on the big docket but not on the trial docket." W. H. Watkins, Jr., complainant's present attorney, of Tylertown, said he knew Nunnelley, who practiced law there until July 1945. Nunnelley lived at a hotel which burned in that month. The fire apparently destroyed a number of court records in Nunnelley's room. He died the next year. In 1958, complainant brought his file on the case to Watkins' partner, and about a year later Watkins learned of the matter and began preparing an amendment.

On May 17, 1960, fifteen years after complainant filed the original bill, he filed a motion to amend it, by substituting a new draft of a bill of complaint, and to revive the cause against the devisees of defendant Osborne, who had died in the interim. Defendant answered the motion, asserting the original bill was wholly insufficient and complainant should be denied an amendment because of his negligent failure to prosecute his suit. Defendant also filed a motion to dismiss the cause for those reasons. After hearing, the chancellor allowed complainants to amend the bill and to revive it, overruled defendant's motion to dismiss, and entered an order to that effect. He granted an interlocutory appeal.

Miss. Code 1942, Recompiled, Section 1578, provides: "The clerk of any court shall move the court to dismiss any cause pending therein in which no step has been taken for the two terms preceding; and the court shall, unless good cause be shown to the contrary, dismiss the same at the costs of the plaintiff or com-

plainant.'' In Mississippi Central Railroad Co. v. Brook-haven Lbr. and Mfg. Co., 165 Miss. 820, 147 So. 814 (1933), it was held that the amendment of this statute in 1930 made it mandatory on the clerk and the court, ''unless good cause be shown to the contrary.'' Since the file was not in the clerk's office, he had no way of knowing about the case. Hence no motion was made by him under the statute, and, for the same reason, the trial court did not dismiss the suit on his own motion. However, Section 1578 is a clear statement of legislative policy that stale cases should be dismissed for want of prosecution.

■■■ Ordinarily amendments to pleadings are liberally allowed to prevent delay and injustice. Miss. Code 1942, Recompiled, Section 1302. However, an application to amend should be prompt and not the result of an inexcusable want of diligence. The privilege to amend should not be abused. Parties desiring the amendment are not excused from exercising proper diligence in bringing and preparing their suit for trial. Hence the liberality in permitting amendments should not ''encourage delay, laches and negligence.'' It is ''the duty of the court to stop short of any such encouragement.'' Griffith, Miss. Chancery Practice (1950), Section 392.

■■■ We think the amendment allowed in this case was clearly improper. The delay of complainant in prosecuting his suit was the result of an inexcusable want of diligence, and of his own laches and negligence. We assume the file was destroyed in 1945 by fire in his attorney's hotel room. The lawyer shortly thereafter died. Nevertheless, complainant waited thirteen years before he employed another attorney to prosecute the suit, and it was fifteen years before the motion to amend the original bill was made. Moreover, the original bill was wholly inadequate to state a cause of action on any theory. In the meantime the defendant, Osborne, who purchased the mineral interest in question, died. In addition,

amendment would clearly deprive appellant of the benefit of the statutes of limitations. See Neal v. Teat, 126 So. 2d 124 (Miss. 1961). To permit an amendment under these circumstances, and after this length of time, would work an injustice to appellant, and would in fact encourage delay, laches and negligence in litigants prosecuting their suits.

It is a well-established maxim that equity aids the vigilant, not those who slumber on their rights. 1 Pomeroy's Equity Jurisprudence (4th Ed. 1918), Section 363, p. 674. Judge Griffith, discussing this maxim in Section 41 of his cited treatise, says: ''Those who are diligent find equity always ready to extend just aid, but the slothful are not favored. There is no principle of equity sounder or more conservative of peace and of fair play than this, which requires a party who has a claim to prefer or a right to assert to do so with a conscientious promptness while the witnesses to the transaction are yet available and before the facts shall have faded from their memories. It is a fact of universal experience that men will generally use diligence to get what rightfully belongs to them, and will unreasonably delay only as to false or inequitable claims, - thus in the hope that fortuitous circumstances may improve their otherwise doubtful chances. If therefore a party delay the bringing of his suit, or delay the taking of some particular step therein, to such an unreasonable time that to allow him so late to proceed would work an injustice and injury upon the opposite party, it will require a much stronger case to move the court to action than if the matter had been seasonably presented; and if on account of the delay a serious injustice would result to the opposite party the court may decline to proceed at all.''

It is the duty of a complainant, having brought the defendant into court, to speed the cause. It is his responsibility, and he must not unreasonably neglect, through his own negligence and laches, to proceed with

the case. Griffith, *ibid.*, Section 538. In Tishomingo Savings Institution v. Allen, 76 Miss. 114, 23 So. 305 (1898), there was a delay of almost ten years in filing an amendment to a bill, but during practically all of the interim period the cause had been removed to the federal district court, and was pending there until it was remanded to the state court. The Court held, ''Under the very peculiar circumstances of this case, we think the amendment was properly allowed.'' Those peculiar circumstances are nonexistent in the instant case. The chancellor should have refused the amendment and dismissed the bill. For these reasons, the order of the chancery court is reversed, and judgment is rendered here overruling the motion to amend and sustaining appellant's motion to dismiss the bill of complaint.

Reversed and judgment rendered for appellant, dismissing bill of complaint.

*Lee, P.J.,* and *Arrington, McElroy* and *Rodgers, JJ.,* concur.