IRVING, J.,
for the Court.
¶ 1. On May 8, 2002, Robert Anderson[1] filed a petition seeking primary physical custody of his daughter Angel.[2] Numerous pleadings were filed by the parties and several court orders were entered before the matter was finally heard on July 7, 2003. At the conclusion of the hearing, the chancellor awarded custody of the child to Anderson. Aggrieved, Carol Ladner, the child’s mother, appeals and raises the following issues for review: (1) the chancellor applied an erroneous legal standard in determining who should get custody of Angel, and (2) the chancellor erred in awarding custody to Anderson.
¶ 2. Finding no reversible error, we affirm the chancellor’s award of custody to Anderson.
FACTS
¶ 3. Ladner engaged in a brief extramarital affair with Anderson that led to the conception of their daughter Angel. Shortly thereafter, Ladner returned to her husband, but the couple soon divorced. Although the name of Ladner’s husband was placed on Angel’s birth certificate, a subsequent paternity test excluded him as the child’s father.
¶ 4. When Angel was approximately one year old, Ladner filed a paternity action against Anderson through the Lee County Department of Human Services. The paternity test results indicated that Anderson was Angel’s father, and an order was entered to that effect in May 1997. Also, Ladner was awarded child support, and Anderson was granted reasonable visitation. Thereafter, Anderson began exercising regular visitation with Angel and became extensively involved in her life. Ladner and Angel subsequently moved to Florida, and Ladner remarried and gave birth to another child. Anderson continued to exercise visitation with Angel while *270 the child lived with her mother and stepfather in Florida.
¶ 5. While residing in Florida, Ladner and her husband David were employed as adult dancers at a local strip club.[3] However, when David decided to join the military, Ladner and her children left Florida and moved back to Mississippi. Upon returning to Mississippi, Ladner briefly resumed a relationship with Anderson and began staying with him. Ladner also began working as a fitness instructor at a local health club but was subsequently terminated due to personal and professional issues. Ladner ultimately ended her relationship with Anderson and reconciled with her husband. After ending the relationship, Ladner moved in with her sister for approximately one year before moving to Texas where her husband was stationed at the time. Shortly thereafter, Anderson began custody proceedings against Lad-ner.
¶ 6. During the custody hearing, Anderson presented evidence that Ladner had little or no income, did not properly care for Angel, subjected the child to a filthy environment, and had taken Angel out of kindergarten in the middle of the school year in an unsuccessful effort to home school her. Ladner’s former health club employers similarly testified that Ladner would bring the children to work with her on a regular basis and that the children often wore the same clothing on consecutive days. The employers also testified that several clients routinely complained that Angel and her brother were dirty and unsupervised. Testimony given during the custody hearing further revealed that Angel had been sexually abused by Ladner’s stepfather, and that Ladner continued to take the child around him even though she had been instructed against doing so by the Department of Human Services.[4]
¶ 7. At the conclusion of the hearing, the chancellor found that Angel’s best interest would be best served by placing her in Anderson’s custody. The chancellor also awarded Ladner extensive visitation rights. Additional facts will be related during our discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

Standard, of Review

¶ 8. “The standard of review in child custody eases is [strictly] limited.” Johnson v. Gray, 859 So.2d 1006, 1012 (¶ 31) (Miss.2003). “A chancellor must be manifestly wrong, clearly erroneous, or apply an erroneous legal standard in order for [an appellate] [c]ourt to reverse.” Id. (citing Mabus v. Mabus, 847 So.2d 815, 818 (Miss.2003)). “ ‘[Findings of fact made by a chancellor may not be set aside or disturbed [on] appeal if they are supported by substantial, credible evidence.’ ” Id. at (¶ 13) (quoting Marascalco v. Marascalco, 445 So.2d 1380, 1382 (Miss.1984)).

(1) Applicable Legal Standard

¶ 9. Ladner first argues that the chancellor applied an erroneous legal standard in determining who should receive custody of Angel. Ladner contends that the May 1997 paternity order awarded her de facto custody of Angel, and as such, Anderson should have been required to prove the material-change-in-eircum-stances standard used in custody modifica *271 tion proceedings. Anderson, however, counters that the chancellor did not err in failing to require him to prove the occurrence of a material change in circumstances before awarding him custody.
¶ 10. The law is well-settled that “the material changes standard used in modification proceedings is dependent on there being a prior determination of custody.” Law v. Page, 618 So.2d 96,101 (Miss. 1993). However, where there has been no prior determination of custody, “the proper standard of law to be applied is that found in divorce proceedings, which is the best interest of the minor child.” Id. (citing Albright v. Albright, 437 So.2d 1003, 1004 (Miss.1983)). Additionally, “in custody [matters] involving an illegitimate child, when the father acknowledges the child as his own, the father is deemed on equal footing with the mother as to parental and custodial rights to the child.” Id. (citing Smith v. Watson, 425 So.2d 1030, 1033 (Miss.1983)).
¶ 11. A review of the record reveals that the chancellor, relying on S.B. v. L.W., 793 So.2d 656 (Miss.Ct.App.2001), found that because custody of Angel had never been judicially determined, the material-change-in-circumstances standard did not apply.[5] We agree with the chancellor’s findings. The paternity order failed to expressly award custody of Angel to Lad-ner. Further, there is no additional evidence in the record to suggest that a determination of custody had ever been made prior to the custody hearing. As a result, we find that the chancellor applied the correct legal standard and properly considered the case as one for initial custody. Therefore, this issue is without merit.

(2) Custody

¶ 12. Ladner’s next assignment of error challenges the chancellor’s award of custody to Anderson. Ladner contends that the chancellor (1) erred in finding that Mississippi Code Annotated section 93-5-24(9)(a)(i) (Rev.2004) applies to the instant case, and (2) misapplied the Albright factors. We first address Ladner’s argument that the chancellor erred in finding Mississippi Code Annotated section 93-5-24(9)(a)(i) inapplicable.
¶ 13. Mississippi Code Annotated section 93 — 5—24(9) (a) (i), which provides for custody restrictions on parents with a history of perpetuating family violence, states the following in pertinent part:
In every proceeding where the custody of a child is in dispute, there shall be a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody or joint physical custody of a parent who has a history of perpetrating family violence. The court may find a history of perpetrating family violence if the court finds, by a preponderance of the evidence, one (1) incident of family violence that has resulted in serious bodily injury to, or a pattern of family violence against, the party making the allegation or a family household member of either party....
¶ 14. Ladner contends that Anderson was both physically and verbally abusive to her on several occasions. During the custody hearing, both parties presented testimony *272 relating to a physical altercation that occurred during Ladner’s brief stay with Anderson after her return from Florida. Ladner testified that during that particular incident, Anderson choked and slapped her and ruptured her eardrum. She alleged that she also sustained bruises to her hip and scratches on the side of her face when Anderson picked her up and threw her on the ground.[6] Ladner further testified that on other occasions when she attempted to end her relationship with Anderson, he would run her off of the road and hit her car.
¶ 15. Anderson similarly testified that on several occasions, Ladner slapped him first, and, in response, he slapped her back. Ladner indeed admitted to first slapping Anderson during the above altercation in an effort to get him out of her face.
¶ 16. After considering the evidence, the chancellor failed to find the existence of a pattern of family violence. The chancellor concluded that the testimony of the parties at most “documented general yelling and screaming which, on a few occasions, resulted in slapping and perhaps one incident of choking ... and there was no serious or even moderate injuries resulting from the same.”
¶ 17. We find that the chancellor was clearly in a position to observe the demeanor of both witnesses and to judge their credibility. Therefore, we give deference to his decision. Considering our limited scope of review and the chancellor’s specific findings on this issue, we are not prepared to conclude that the chancellor was manifestly in error. Accordingly, we find that this issue is without merit.
¶ 18. We further find Ladner’s argument that the chancellor misapplied the Albright factors similarly lacks merit. We note that “[i]n custody battles, the best interest of the child remains paramount and the central focus for a chancellor should always be on how a given situation may adversely impact upon the child.” Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993). “[Nevertheless], our limited scope of review directs that ‘[w]e will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interests of the child.’ ” Id. (quoting Yates v. Yates, 284 So.2d 46, 47 (Miss.1973)).
¶ 19. Here, the chancellor determined that Angel’s interests would be best served by placing her in the custody of her father. In arriving at this conclusion, the chancellor undertook a lengthy analysis of the various factors set forth in Albright, and thoroughly explained his evaluation of the evidence bearing on each factor. In a detailed judgment, the chancellor found that the following factors were neutral and did not weigh in favor of Ladner or Anderson: (1) the age of the child, (2) the health and sex of the child, (3) the age, physical, and mental health of the parents, the moral fitness of the parents, and (4) the emotional ties of parent and child. Of the remaining factors, the chancellor concluded that factors such as the best parenting skills, willingness and capacity to provide primary child care, employment responsibilities, and the child’s home, school, and community records all favored Anderson. The chancellor further concluded that factors such as the stability of the home environment and employment of each parent also tilted in Anderson’s favor. Additionally, the chancellor positively not *273 ed the assistance provided by Anderson’s parents in helping care for Angel. The only factor that the chancellor found slightly weighed in Ladner’s favor was the factor regarding Angel’s continuity of care.
¶ 20. After thoroughly weighing the evidence and each Albright factor, the chancellor awarded custody of Angel to Anderson. We find that the record contains substantial evidence to support this conclusion.
¶ 21. Finally, Ladner contends that the chancellor should have given more consideration to the relationship between Angel and her half-brother before separating them. Ladner argues that it is not in Angel’s best interest to be separated from her brother. We note that there is no general rule in this state that the best interest of siblings is served by keeping them together. See Sellers v. Sellers, 638 So.2d 481, 484 (Miss.1994) (citing Sparkman v. Sparkman, 441 So.2d 1361, 1362 (Miss.1983)). Accordingly, we find that the chancellor did not err in awarding physical custody to Anderson.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. Fictitious names are used for the parties to protect their identities.

. In his custody petition, which was styled "Complaint for Modification of Custody and Temporary Restraining Order,” Anderson alleged, among other things, that the child was not being adequately cared for and had been subjected to poor living conditions and an unsafe environment. Anderson also petitioned the court for a temporary restraining order in an effort to prevent the child's impending move to Germany where her stepfather was stationed in the military.

. Prior to moving to Florida, Ladner also had previously worked as a stripper when Angel was six months old.

. At the time of the custody hearing, Ladner's stepfather had been indicted by a Lee County grand jury on molestation charges involving Angel and was awaiting trial.

. In L.W., the father of an illegitimate child petitioned the chancery court for a determination of paternity and for custody of the child. L.W., 793 So.2d at 657 (¶ 1). Because custody had never been judicially determined, the chancellor treated the case as one for initial custody rather than one for modification of custody. Id. at 658 (¶ 7). This Court affirmed the chancellor’s decision and concluded that the case was properly considered using the standard for initial custody. Id. at (¶ 14).

. The record reveals that although a police report was filed, no charges were ever brought against Anderson.