KING, C.J.,
for the Court:
¶ 1. The Chancery Court of Lincoln County denied Lori D. Brown’s motion for reconsideration of the court’s ruling on the issue of child custody. Aggrieved, Brown appeals, raising two issues: (1) whether the chancellor improperly resolved the proceeding below as an initial determination of custody and not as a modification of custody, and (2) whether Christopher Crum waived his right to seek an initial custody determination. Finding no error, we affirm the judgment of the chancellor.
FACTS
¶ 2. Crum and Brown are the biological parents of two minor children born out of wedlock, Caelan Sylvia Crum, a five-year-old female, born on May 80, 2003 and Brendon Jacob Crum, a four-year-old male, born on July 23, 2004. Crum, who is currently married to Lisa Jodie Crum, and living in Arlington, Tennessee, acknowledged paternity and entered into a child support agreement through the Mississippi Department of Human Services (DHS). Brown and Crum testified that Crum had been paying Brown $393 dollars per month in child support since the birth of Brendon. Crum and Brown testified that they entered into a verbal arrangement with regard to visitation and care for the children.
¶ 3. Since 2006, Brown and Crum arranged to have the children visit Crum in Arlington every other weekend and several weeks during the summer and the holidays. The only exception to this agreement was when Brown would become upset or angry with Crum; then the children were not allowed to visit. On May 21, 2008, Brown filed a complaint requesting the court to award joint legal custody to Brown and Crum, with primary physical custody to Brown; to grant Crum visitation rights; to designate a location for the exchange of the minor children for visitations; and to award Brown attorney’s fees and court costs. On July 7, 2008, Crum filed an answer to the complaint and a counter-complaint for custody. In the counter-complaint, Crum requested temporary and permanent custody of the minor children, subject to normal visitation rights being granted to Brown, as well as reasonable attorney’s fees and court costs.
¶ 4. A trial was held on October 8, 2008. Although the parties did not petition the court to make a determination of child support, the parties understood that in resolving the issue of child custody, the chancellor would make a determination as to the proper amount of child support to be paid by either Brown or Crum.
¶ 5. Following an Albright[1] analysis, the chancellor ruled that the following factors favored neither party: the children’s ages, health, gender, physical care, emotional *1257 support, and guidance. The chancellor held that the following Albright factors favored the parties equally: appropriate social and extracurricular activities, free time spent with the children, and employment of the parent and responsibilities of that employment.
¶ 6. The chancellor also indicated that the following factors favored Crum: discipline; physical and mental health and age of the parents; moral fitness; home, school, and community record of the children; stability of the home environment and employment of each parent; and other factors relevant to the parent-child relationship. The chancellor acknowledged his concern that Brown had failed to take the appropriate action to report bruises found on Brendon after Brendon returned from a visitation with Crum. The chancellor also acknowledged Brown’s bad judgment in being noncompliant with taking her medication for Crohn’s disease and posting photographs on her MySpace page of herself with different men, of herself at different events where she was surrounded by individuals who were intoxicated, and of her children. Further, the chancellor expressed concern that Brown had no definite time frame for becoming gainfully employed and that Brown did not want to marry despite having three children out of wedlock by two different men.
¶ 7. Ultimately, the chancellor awarded Brown and Crum joint legal custody of the children with Crum having primary physical custody and Brown having visitation rights following the court’s visitation guidelines. The visitation exchange point was set as Vaiden, Mississippi. The chancellor also ordered that the child support obligations taxed against Crum would be suspended, and Brown would begin making child support payments once she becomes employed. Each party was allowed to claim one child as a dependent for income tax purposes.
118. On October 23, 2008, Brown filed a motion for reconsideration. Brown’s post-trial motion was denied on February 2, 2009. Brown timely filed this appeal.
STANDARD OF REVIEW
¶ 9. “The matter of child custody is a matter within the sound discretion of the chancellor.” Sturgis v. Sturgis, 792 So.2d 1020, 1023 (¶ 12) (Miss.Ct.App.2001). In reviewing the award of child custody, this Court will affirm the decision of the chancellor unless that decision is manifestly wrong, clearly erroneous, or the chancellor applied an erroneous legal standard. Roberson v. Roberson, 814 So.2d 183, 184 (¶ 3) (Miss.Ct.App.2002). “The chancellor’s decision must be supported by substantial evidence in the record.” Norman v. Norman, 962 So.2d 718, 720 (¶ 4) (Miss.Ct.App.2007).
ANALYSIS
I. Whether the chancellor improperly resolved the proceeding as an initial determination of custody and not as a modification of custody.
¶ 10. Brown argues that this matter should have been treated as a modification of custody rather than as an initial determination of custody. Brown claims that Crum acknowledged paternity of the children at birth. Brown asserts that because she and Crum had established paternity and initiated child support and visitation via an agreement with DHS, the chancellor should have used the material change in circumstances standard in making his determination of custody. Further, Brown contends that Crum’s acceptance of his role as “non-custodial parent” and his duty to pay child support indicate that a prior determination of custody had been made.
*1258 ¶ 11. The proper legal standard to be applied in making a determination of the custody of a child born out of wedlock, who has been acknowledged by the father and where there has been no prior determination of custody, is the best interest of the minor child. Law v. Page, 618 So.2d 96, 101 (Miss.1993). Thus, “the father is deemed on equal footing with the mother as to parental and custodial rights to that child.” Id. When paternity and custody are determined at the same time, then it is deemed as an initial custody determination, because custody of the child had not been previously determined by the judiciary. Romans v. Fulgham, 939 So.2d 849, 852 (¶ 4) (Miss.Ct.App.2006). “If custody had been determined previously, the proceedings would have been considered a modification of custody, and the well-settled ‘material change in circumstances’ standard would apply.” Id.
¶ 12. In this case, Brown claims that an initial determination of custody was made when Crum acknowledged paternity and a DHS child support agreement was initiated. Both Crum and Brown testified to the existence of a DHS agreement; however, that agreement is not contained in the record before this Court. DHS is authorized to initiate paternity proceedings, but there is nothing in the statute to suggest that DHS is authorized to initiate custody determinations. Romans, 939 So.2d at 852 (¶ 5). “Child custody is a judicial determination.” Gilcrease v. Gilcrease, 918 So.2d 854, 859 (¶ 8) (Miss.Ct.App.2005).
¶ 13. While the Mississippi Supreme Court has noted that “custody issues are routinely decided in paternity actions,” it has also recognized that “a paternity action is not the most convenient or appropriate forum for determining the best interest ] of the child where custody actions are arranged to effectively and exhaustively address the issue.” Griffith v. Pell, 881 So.2d 184, 187-88 (¶ 12) (Miss.2004). There is nothing in the record that suggests that custody was determined during paternity proceedings. Therefore, we find that no initial custody determination was made and that the chancellor properly categorized the proceedings as an initial determination of custody and applied the Al-bright factors rather than a modification of custody applying the material-change-in-circumstances standard. Therefore, this assignment of error is without merit.
II. Whether Crum waived his right to seek an initial custody determination.
¶ 14. Brown asserts that because Crum waited nearly five years after acknowledging paternity to assert his custodial rights, he waived his right to seek an initial custody determination. We find that this issue is without merit.
¶ 15. In Smith v. Watson, 425 So.2d 1030, 1033 (Miss.1983), the supreme court stated that in custody dealings involving a child born out of wedlock, “upon acknowledging the child as his own, the father has an equal claim, with the mother, to the parental and custodial rights to the child.” This Court has previously held that “there is no law to support a different burden of proof for fathers of children born out of wedlock who delay in seeking custody.” Williams v. Stockstill, 990 So.2d 774, 776 (¶8) (Miss.Ct.App.2008). “The law is that unless a prior custody determination has been made, custody is determined by the Albright factors.” Id. It is well settled in child custody cases that the Albright factors are the factors used to determine what is in the best interest of a child with regard to custody. Those factors are as follows:
[Age,] health, and sex of the child; a determination of the parent that has had the continuity of care prior to the sepa *1259 ration; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parentf;] and other factors relevant to the parent-child relationship.
Albright, 437 So.2d at 1005.
¶ 16. However, the chancellor can weigh other factors such as “[t]he credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation” in making his decision regarding custody. Johnson v. Gray, 859 So.2d 1006, 1014 (¶ 36) (Miss.2003). Although delay in asserting custody may be a factor to be considered in determining the best interest of the child, it is not the controlling factor.
¶ 17. In this case, testimony suggested that Crum was still involved in a relationship with Brown prior to the birth of Cae-lan and at least the first year of Caelan’s life. In addition, Crum acknowledged paternity and paid child support soon after the birth of Brendon. Crum has manifested an interest in having an active role in the lives of Caelan and Brendon. The record reflects that Crum did visit with the children as often as allowed by Brown prior to the defined visitation schedule established in 2006, and Brown had been paying child support since 2003. There is no evidence indicating that Crum waived his right to an initial determination of custody or that a prior judicial determination was made as to custody that would require a different burden of proof. Therefore, the chancellor’s initial determination of custody was properly made by an analysis of the Albright factors during trial on October 8, 2008.
CONCLUSION
¶ 18. Finding sufficient evidence in the record to support the chancellor’s decision to award joint legal custody of the children to Brown and Crum with Crum having primary physical custody, we affirm the judgment of the chancery court.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF LINCOLN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. GRIFFIS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION.

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).