981 So.2d 345 (2008)
Demetri MARSHALL, Appellant
v.
Likitha HARRIS, Appellee.
No. 2006-CA-01930-COA.
Court of Appeals of Mississippi.
May 6, 2008.
*346 Jessie L. Evans, attorney for appellant.
Melvin Hurley McFatter, attorney for appellee.
Before LEE, P.J., CHANDLER and BARNES, JJ.
CHANDLER, J., for the Court.
¶ 1. The Chancery Court of Claiborne County entered an order declaring Demetri Marshall to be the natural father of the two minor male children, M.M., who was born March 3, 1999, and O.M, who was born April 24, 2005. The chancellor granted custody of both children to their mother, Likitha Harris, and ordered Marshall to pay child support of $1,000 per month along with medical benefits. Marshall received visitation every other weekend, holidays, *347 and the entire month of July. Aggrieved, Marshall appeals. He asserts that the chancery court erred by presuming the best interests of the children were to remain together and that the chancery court unduly curtailed his visitation with the children.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Marshall and Harris began a relationship in 1997 when Harris was in nursing school. Marshall was a physician who practiced in Port Gibson, Mississippi. He was approximately twenty-one years older than Harris. Marshall had only been married once, but he admitted he had ten children by five different women. Two of the children were adopted. Harris had never been married and had only the two children fathered by Marshall.
¶ 4. Marshall and Harris never married, but they lived together in a home in Jackson, Mississippi. Testimony revealed that Marshall would travel to Jackson on Tuesday and stay until Thursday, and he would spend the remainder of his time in Port Gibson where he practiced medicine and owned another home. Marshall also said he spent time in Mobile, Alabama.
¶ 5. There was some dispute as to why the parties eventually separated. Marshall believed Harris was upset because he spent so much time helping his ex-wife, who eventually died of cancer. Harris said that the relationship ended because Marshall had a child by another woman just before their second child was born.
¶ 6. The relationship ended in 2006, and Harris filed a paternity suit against Marshall. Marshall then filed a claim for custody and visitation. The chancellor consolidated the two suits into the present case. Prior to trial, both parties stipulated that Marshall was the father of both children. Thereafter, the chancellor entered an agreed order reflecting such stipulation.
¶ 7. The chancellor found that both parties were good parents. In awarding custody to Harris, the chancellor noted that she had been the boys' primary caregiver since their birth. Harris's work schedule was more accommodating for the boys, and she lived in one place. Marshall, however, traveled back and forth between Jackson and Port Gibson weekly, and he already had two of his other children living with him. The chancellor found that both parties were physically and mentally fit, that they were both morally fit, and that they both enjoyed a close relationship with the children.
¶ 8. Marshall argued that it was in the best interests of the children to separate them and to grant custody of M.M. to him. The chancellor noted that Marshall had better financial resources but disagreed that it was necessary to separate the children. M.M. had a stable home environment and good school records. The chancellor also found that Marshall failed to prove that it was not in the best interests of the children to keep them together as a family unit.
¶ 9. The chancellor ordered Marshall to pay child support to Harris in the amount of $1,000 per month along with health insurance and seventy-five percent of the medical expenses. Because this was a paternity suit, the chancellor also awarded Harris $2,000 in attorney's fees. Marshall received visitation every other weekend, the entire month of July, alternating Thanksgivings, and every year for Kwanzaa.

STANDARD OF REVIEW
¶ 10. We apply a limited standard of review in a custody case, and we will not reverse the judgment of the chancellor unless it was manifestly wrong, clearly *348 erroneous, or if the chancellor applied an erroneous legal standard. K.D.F. v. J.L.H., 933 So.2d 971, 980(¶ 33) (Miss.2006) (quoting Hensarling v. Hensarling, 824 So.2d 583, 586(¶ 7) (Miss.2002)). There must be substantial evidence in support of the chancellor's findings. Copeland v. Copeland, 904 So.2d 1066, 1074 (¶ 30) (Miss. 2004).

ANALYSIS OF ISSUES
I. Whether the chancellor improperly considered the best interests of the minor children when he refused to grant separate custody of them.
¶ 11. Marshall first takes issue with the chancellor's decision not to grant separate custody of the two minor children. He claims the chancellor improperly relied on the case of Sparkman v. Sparkman, 441 So.2d 1361 (Miss.1983), in considering whether to separate the children. Marshall concedes that the chancellor considered the Albright factors, but he argues that the chancellor was under the mistaken impression that the law would not allow him to separate the children, thereby rendering the Albright analysis an afterthought.
¶ 12. As always, the polestar consideration in a child custody case is the best interest of the child. Copeland, 904 So.2d at 1074(¶ 31). The chancellor should consider the following factors to determine the best interest of the child:
1) age, health and sex of the child; 2) determination of the parent that had the continuity of care prior to the separation; 3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; 4) the employment of the parent and responsibilities of that employment; 5) physical and mental health and age of the parents; 6) emotional ties of parent and child; 7) moral fitness of parents; 8) the home, school and community record of the child; 9) the preference of the child at the age sufficient to express a preference by law; 10) stability of home environment and employment of each parent; and 11) other factors relevant to the parent-child relationship.
Hollon v. Hollon, 784 So.2d 943, 947(¶ 12) (Miss.2001) (citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983)).
¶ 13. In Sparkman, the supreme court noted that while there is no per se rule that siblings should remain together, the court should try to keep children together as a family unit. Sparkman, 441 So.2d at 1362. The supreme court went on to state that "in the absence of some unusual and compelling circumstance dictating otherwise, it is not in the best interest of children to be separated." Id.
¶ 14. Marshall points us to a number of cases in which the courts found that separating siblings was in their best interests. See Bowen v. Bowen, 688 So.2d 1374, 1381-82 (Miss.1997); Bell v. Bell, 572 So.2d 841, 846 (Miss.1990); C.W.L. v. R.A., 919 So.2d 267, 273(¶ 21) (Miss.Ct.App. 2005). However, none of those cases hold that it is improper to consider whether to separate siblings as a factor in awarding custody. Instead, they reaffirm that it is one factor to consider in determining the best interests of the children. See Bowen, 688 So.2d at 1382; Bell, 572 So.2d at 846; C.W.L., 919 So.2d at 272-73 (¶¶ 19-21).
¶ 15. In Bell, the supreme court affirmed the chancellor's decision to grant separate custody, noting that the chancellor took into account the boy's desire to live with his father. Bell, 572 So.2d at 846. The chancellor did not err in finding the child's wishes outweighed the preference not to separate the children. Id. Similarly, in Bowen, the supreme court noted that it *349 is usually best not to separate children. Bowen, 688 So.2d at 1381. Nevertheless, Bowen affirmed the decision to separate the children. Id. The supreme court found the chancellor properly considered that one child expressed hostility toward his father, and the other had problems living with his mother. Id.
¶ 16. In C.W.L., this Court stated that it is not a general rule that it is in the best interest of siblings to remain together. C.W.L., 919 So.2d at 273(¶ 21) (citing Sellers v. Sellers, 638 So.2d 481, 484 (Miss. 1994)). We see no inconsistency in this statement because the supreme court has always stated there was no such per se rule. See Sparkman, 441 So.2d at 1362. What was important in C.W.L. was that the chancellor properly considered the Albright factors and that there was substantial evidence to support the custody order. C.W.L., 919 So.2d at 272-73 (¶¶ 19-20). Furthermore, Sellers, which we relied on in C.W.L., recognized that the courts should try to keep siblings together if possible. Sellers, 638 So.2d at 484 (quoting Mixon v. Bullard, 217 So.2d 28, 30 (Miss. 1968)).
¶ 17. Additionally, this Court recently stated that:
While the placement of children with their siblings is not a concern that "overrides" the best interest of the child, our case law makes it clear that keeping siblings together is assumed to be in the best interest of a child, absent a showing that the circumstances in a particular case are to the contrary.
Owens v. Owens, 950 So.2d 202, 207(¶ 16) (Miss.Ct.App.2006). Owens held that the chancellor's great emphasis on keeping the siblings together was not in error because he properly addressed each of the Albright factors, and he determined keeping the children together would be in their best interests. Id. In Sootin v. Sootin, 737 So.2d 1022, 1027(¶ 15) (Miss.Ct.App.1998), this Court reversed the decision of a chancellor that separated two sisters. Id. at 1027-28(¶ 15). We found that there was not sufficient evidence to justify separating the two siblings. Id.
¶ 18. Marshall takes issue with the following passage from the transcript:
I've already made up my mind, but I will give a written opinion setting forth the facts and circumstances for a couple of reasons. One is because it is a custody case, and you have to make a record in a custody case of certain factors which are set forth in case law when you're making a determination of custody. And I've considered each one of those factors already, but I'm going to make a written finding instead of dictating to the court reporter to save her the trouble of transcribing the opinion.
In any event, I know it has caused you a lot of anxiety. I'm not going to remove custody from you, so you can rest easy on that. The main reason outside the [Albright] factors is that the case law prohibits a judge from separating siblings as in your case; you have two children, and the law prefers that siblings stay together, which, of course, would be impossible to do by removing one from your home.
Marshall also references a passage from the final judgment:
Moreover, Dr. Marshall has suggested to the Court that it is in the children's best interest to be separated. The main basis of his opinion is that [M.M.] is at an age when he needs his father. While the Court agrees that all children need their father, they also need their mother. Moreover, it is presumed that it is in siblings['] best interest to keep them together as a family unit. Sparkman v. Sparkman, 441 So.2d [1361] (Miss.1983). Dr. Marshall has offered little evidence *350 to overcome this presumption except that it is his desire.
¶ 19. From the cited passages, it is clear that the chancellor considered each of the Albright factors in awarding custody of both children to Harris. The chancellor found the best interests of the two boys would be to remain together in the care of their mother. Harris had a more forgiving work schedule and a stable home environment that did not require her to constantly travel. M.M. was doing well in school, and Harris was the parent who had taken care of the boys since they were born.
¶ 20. The chancellor stated that keeping the children together was a factor he considered in addition to the Albright factors. He went on to say that the law prefers the children to remain together, and he saw no reason why the children should be separated. Ultimately, the chancellor refused to separate the children because he found Marshall had put on little evidence to show that M.M. would be better served by living with his father. After reviewing the record, we see no error with the chancellor's ruling. The chancellor properly considered each of the Albright factors and the best interests of the children. His decision to award custody of both children to Harris was supported by substantial credible evidence. We find this issue to be without merit.
II. Whether the chancellor unduly curtailed Marshall's visitation with the minor children.
¶ 21. Marshall next argues that the chancellor's ruling on visitation was in error because it had the effect of reducing the amount of time he could spend with M.M. to an amount of time less than what he spent with them before the order. He also takes issue with the visitation schedule because it did not grant him a minimum of five weeks of visitation during the summer.
¶ 22. A chancellor is afforded much discretion in determining visitation. Rogers v. Morin, 791 So.2d 815, 820(¶ 9) (Miss.2001). As with the determination of custody, the chancellor must award visitation based on what is in the best interest of the child. Id.
¶ 23. Under Chalk v. Lentz, 744 So.2d 789, 792(¶ 9) (Miss.Ct.App.1999), this Court stated that the minimum liberal visitation should include two weekends a month during the school year and a five-week period during the summer. Id. (quoting Crowson v. Moseley, 480 So.2d 1150, 1153 (Miss.1985)). However, in Horn v. Horn, 909 So.2d 1151, 1162(¶ 39) (Miss.Ct.App.2005), this Court clarified that Chalk did not mandate a five-week summer visitation for non-custodial parents. Id. Horn reaffirmed that the chancellor has discretion to fashion a visitation order to suit the child's best interest. Id.
¶ 24. Marshall received visitation on alternating weekends, the entire month of July, alternating Thanksgivings, and each year he was allowed visitation from December 26 until the following January 1 to celebrate Kwanzaa. In addition, the visitation order granted Marshall the right of visitation at any other time contingent upon the parties agreeing to such additional visitation.
¶ 25. We do not find the chancellor's visitation order to be in error. The chancellor never stated he was granting liberal visitation, and the summer visitation he granted to Marshall was for the entire month of July, as Marshall requested. The thirty-one days in July falls short of the five weeks, of which Marshall is now a proponent, by only four days. Furthermore, the chancellor granted Marshall an additional seven days of visitation at the end of each year to celebrate Kwanzaa *351 with his children. We find that this visitation order adequately provided for Marshall's visitation with his minor children and that the chancellor did not abuse his discretion in determining visitation. This issue is without merit.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF CLAIBORNE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES AND CARLTON, JJ., CONCUR. GRIFFIS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY CHANDLER, ISHEE AND ROBERTS, JJ. ISHEE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. ROBERTS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.
GRIFFIS, J., specially Concurring.
¶ 27. I concur with the result reached by the majority. I write separately to address the scope of the Court's ruling today.
¶ 28. Issue I considers only whether the chancellor erred in his decision to not separate the custody of the two minor children. I find no error with this determination. However, the Court's opinion also seems to conclude that we have examined the chancellor's review of the Albright factors and have determined that the chancellor's consideration of those factors was correct.
¶ 29. The chancellor's opinion held, "[t]here is no evidence that neither party is not morally fit. The fact that Dr. Marshall does not believe in a traditional family is no evidence that he is not a good person." I cannot accept this was a correct finding.
¶ 30. "Morals" is defined as "of or concerned with the judgment of the goodness or badness of human action and character; teaching or exhibiting goodness or correctness of character and behavior; conforming to standards of what is right or just in behavior;. . . ." The American Heritage Dictionary of the English Language 1173 (3rd ed.1992). Having biologically fathered eight children by five different women, I cannot agree that Marshall has exhibited moral fitness. In my opinion, this fact alone is sufficient to determine the moral fitness factor favors Harris.
¶ 31. I recognize that this issue was not contested on appeal. I write separately simply to clarify, in the opinion, that I do not believe the Court has ruled that Marshall's conduct exhibited moral fitness. Indeed, Marshall's sexual promiscuity is indicative of his lack of moral fitness.
¶ 32. I concur with the result reached by the majority.
CHANDLER, ISHEE AND ROBERTS, JJ., JOIN THIS SEPARATE OPINION.